Mr. Charnes, whenever you're ready. Good morning, and may it please the court. My name is Adam Charnes, and I represent the class plaintiffs in this appeal. I would like to reserve five minutes for rebuttal. This case is a class action alleging that the government breached a settlement agreement with the class plaintiffs related to the payment of cost of living adjustments, or COLA. Let me just nail one thing down. It appears the Court of Federal Claims factual summary pretty much relied on your complaint. Do you dispute any of the facts articulated in the memorandum of opinion and final order? I think the answer is no. I think you're right that the court basically tracked the allegations in the complaint. I think some of the implications the court drew from the settlement agreement we would disagree with. Sure, but I just wanted to nail that down for purposes of our drafting. That's right. I think that's right. So in the settlement agreement, the government agreed to a number of procedures related to the calculation of COLA payments to workers in not so-called non-foreign areas of the United States, and specifically agreed to follow what the agreement termed a conforming methodology unless the government provided appropriate notice that it was not paying the conforming methodology. After the settlement agreement was signed, however, the government pulled a classic bait and switch when Congress adopted a statute eliminating or phasing out the COLA program altogether. And we allege that this breached the express and implied duty of good faith and fair dealing in the settlement agreement. Is it your position that it wouldn't matter how long a period that the COLA was in existence that Congress was bound to keep it in existence for all time in order to avoid a breach of their contractual obligations? Or could they, let's say in 2020, after 20 years after the settlement agreement, decide to go to a locality pay or some other provision? Well, the contract, the settlement agreement does not contain any sort of sunset provision. Of course, the government could have negotiated for it. Right. So what I'm trying to see is, is are you saying that they're stuck with COLAs for the rest of time? I think the short answer is that would be somewhat of an extreme position, but I think yes, under the settlement agreement, you know, they can change the methodology if they provide notice, but they agreed to provide COLA payments. Of course, COLA has been provided at that time for more than 50 years. So it's not like this was a recent innovation. It was a well-established part of the federal compensation or compensation for federal employees in the non-foreign areas that was formalized in 1948. But presumably, it wouldn't matter what the calculation method used to derive the COLAs would be, right? They could modify that pursuant to the contract. They could modify that if they provided notice. Our position would be, of course, it would have to be in substance a cost of living adjustment. Well, that was going to be my next question, of course. I mean, what does that entail? I mean, because they say, well, we recognize that the costs of living are different in different localities, and therefore, we think the best way to get at fairly the cost of But we'll call it a COLA. Well, I think that's essentially their argument. The difference, however, is COLA is based on, for 50 years, was based on a comparison between the costs of goods and services in the non-foreign areas compared with those in Washington, D.C. So it was a price-based, cost-based, how much does it cost to live in, for example, Puerto Rico compared to Washington, D.C. Locality pay is entirely different. It compares the cost of labor. How much does a federal employee make? Right, but there's got to be some fair correlation, some reasonable correlation between those two. Otherwise, people are going broke in the high cost of living areas. Well, I think you put your finger on it. I think that's exactly the problem here is that a lot of these areas are high cost because it's expensive to get goods and services to to locality pay significantly disadvantaged class members because it moved from a system that compensated them for the higher costs of goods and services and shifted to a system that basically punished them because wages were so low. Well, Guam may be a special case. I don't know. But, for example, in Alaska, where goods are expensive, wages are high. And there's a reason. Well, but the allegation to the complaint is that overall the shift from COLA to locality pay disadvantaged class members. So I think at some point, Your Honor, good faith doesn't prevent assuming the notice is provided for departing from the conforming methodology. The government has certainly some discretion to modify the COLA regime and how it calculates COLA. But what the complaint alleges is that this was a radical departure from a system based on cost comparisons to one based on wage comparisons that substantially disadvantaged the members of the class. Was the COLA elimination a breach of contract or simply confined to the duty of good faith? We argue it was both. Where do you argue that it was a breach of contract? I didn't see it in the blue brief. Well, we argued it was because they failed to provide adequate notice and that that constituted a breach of contract. In other words, there's no question they can depart from the conforming methodology under the settlement agreement if they provide notice. So we argue that the CFC erred in finding that sufficient notice under the settlement agreement was provided and that was the prerequisite for the breach of contract that was alleged in the complaint. So we think on the good faith claim, this court's Sentex decision is directly on point. In Sentex, the government signed a contract in which to sell failed savings and loan, Congress had established significant tax benefits in the tax code for purchasers of savings and loans. The government used that to essentially market the failed savings. But in that case, the obligation was that the citizens would continue to have their tax deductions even if there was a change in law, right? Wasn't that what was going on in Sentex? Well, no. The contract was silent. The contract between the government and the purchaser did not provide the tax. The taxes were a preexisting law. And after the parties purchased the savings and loan, Congress eliminated the tax benefit. And then the purchasers sued, and this court found that it was a breach of the duty of good faith. Congress certainly has the sovereign right to pass any statute it wants to, and we can challenge that. But that is a breach of the duty of good faith for Congress to eliminate a benefit that one party to a contract reasonably anticipated receiving. Yes, that's the distinction. Well, the question is in this case, what are you claiming that the members of the class reasonably anticipated receiving? COLA payments forever? They reasonably anticipated receiving COLA payments. That's right. But if you're wrong about your construction of the contract, and particularly the word regulations that's used that allows the government to modify by regulation the COLA system, if you're wrong about that, then you've acknowledged in the contract itself that the government is free to make modifications that include getting rid of the COLA. In that case, the whole Sentex problem goes away, I would assume. I think you're right. If the class... All of this really turns on... I mean, Sentex strikes me both as an extreme case, and I'm familiar with it, and also as pretty much irrelevant, because if you're right about your contract interpretation issue, you don't need Sentex. If you're wrong about it, Sentex is of no use to you. Well, the government's point, I think, is that they argue that the contract never requires the payment of COLA. And so I think if you accept their interpretation of the contract, then I think that Sentex helps. Certainly, we think that that's... Never requires the payment of COLA? You mean... The government had the authority simply to... To change. To change. That's right.  That's right. But the government, I think in their brief, concedes that they're... I don't think they argue that there's an express right, through the provision that you're referring to, to eliminate the COLA program. They argue in their brief that the right to eliminate COLA was implicit or implied. At page 42 of their brief, they say it was only an applied right to eliminate COLA. And part of our point is that there's an express duty of good faith in this contract, and that an applied right to eliminate the COLA program can't trump the express duty of good faith. Let's turn that around a little bit. You don't identify any provision in the settlement agreement that implies perpetuity on payment of COLA payments. Well, there's no provision that expressly requires the government to provide COLA. That's true of every good faith claim. If you have an express provision, you don't need to... But why would that perpetuity not expand the original bargain between Mr. Carvalho and the government? Because the duty of good faith is limited by the original bargain. That's right. But the presumption underlying the agreement, from the class's perspective, and we would suggest that that's reasonable, and that's, I think, the standard from Sentex and other cases, is whether the expectation is reasonable, is that the government would continue a 50-year-old program of paying COLA payments. And in fact, if you look at the provisions that deal with, that allow the government to change the system of COLA, to depart from the so-called conforming methodology, they talk in terms of changing the methodology for determining COLA. In paragraph 10.4.3, I think is the primary one, the settlement agreement says that if OPM provides notice, it may then revise its regulations or set COLA rates in a manner that is not consistent with the conforming methodology. So I think the most natural reading of the language in the agreement is if the government has discretion to depart from the specified methodology if it provides notice, but in that case, what it's going to do is follow a different methodology for determining COLA. There's no suggestion anywhere or hint anywhere in the agreement that the government can eliminate the program altogether. I'm reading that paragraph right now. If it does so, OPM will not incur any liability to class members either in damages or the law. If, however, solely on the basis that any regulation or COLA rate at issue is not reasonably consistent with the conforming methodology. So why wouldn't any regulation that OPM revises, the earlier sentence says may then revise its regulations or set COLA rates. So why isn't that a very broad give to the government to revise regulations that would include this locality pay stuff as well? Because I think that the COLA is established in two ways. There's a set of regulations in the CFR that provides how government is going to provide COLA. It's starting in section 591.201 of 5 CFR. And that sets the methodology by which COLA is determined. And then the government actually publishes specific COLA rates in the past seven or eight years on its website, which is cited, I think, in both of our briefs. The last point I'll make, I think, is that this case comes to you, unlike SENTACs, as a motion to dismiss. So all we need to do, I think, is to allege a plausible claim for breach of the duty of good faith. It may be that it's summary judgment or a trial. That claim ultimately gets rejected. But the question is not, at this point, whether this court believes that we've established such a claim, but simply whether that claim is plausible. And that's different than SENTACs. In SENTACs, this court relied heavily, for example, on the negotiation history of the contracting question. It relied on material that was outside the actual language of the contract to establish a good faith claim. We'll enter your rebuttal when we give you a government, and we'll save the rest. May it please the court. With the execution of the settlement agreement, plaintiffs received $232 million for their past cost of living allowances. The plaintiffs also received future increased COLA payments going forward from October of 2000, which, in fact, they received. But these increased COLA payments did not affect the pension annuities for federal workers because COLA payments are not considered in calculating retirement annuities. Accordingly, to increase the retirement annuities for federal workers in the non-foreign areas, Congress passed NERIA, which phased out COLA, but which instituted a locality pay regime whose effect was to increase the retirement annuities for these federal workers. Well, yes, but they're unhappy because they think that when you balance out the benefits and the detriment of the change, that they were seriously prejudiced. And so I think we pretty much have to take that as a given. We can't proceed on the idea that they, unbeknownst to them, they really are better off now than they were before. So let me ask you a question. Moving from the merits to the jurisdictional issue that you raised in your brief, you say that this case should not have been brought in the Court of Federal Claims. Where should they have gone to enforce their contract rights under the agreement? Your Honor, they did bring a claim in the district court. They did, but where should they have been? They should have been in the district court. But wait, you told the district court that they shouldn't be in the district court. And now you're telling them they shouldn't be in the Court of Federal Claims. Where should they have gone? Your Honor, it depends on if they meet the $10,000 threshold. Well, let's assume that they're above the $10,000. Where should they be? If they were above the $10,000 threshold at the time, in 2012, when they brought the claim in the district court, they should have been in the Court of Federal Claims, Your Honor. And now that they're in the Court of Federal Claims, you say they're not in the right court. Well, we're saying they're not in the right court for two reasons. One is the res judicata argument, which is... Well, let's set that aside for now. Okay. Then secondly, we're saying that there's no monetary claim here. Well, then that would have been true if they were above the $10,000 line. If you're right about the argument that the Court of Federal Claims doesn't have jurisdiction because this isn't a monetary claim, then the Court of Federal Claims would not have jurisdiction. You've already told us that the district court didn't have jurisdiction. I'm asking you what court does have jurisdiction to enforce this agreement. Okay. So the issue then would be, under 10.4.2, if there is a disagreement with a conforming methodology, they can bring a claim seeking a declaratory judgment. Where? You can't do that in the Court of Federal Claims, right? It would be at the district court or a district court. But you've told the district court it didn't have jurisdiction. Is there another court where they could get this enforced other than the two you've already said aren't available? Well, I would say a district court, then, Your Honor. So the District of South Carolina would have jurisdiction? Well, Your Honor, South Carolina, I don't think there's non-foreign... Well, why is the District Court for the Virgin Islands disabled from handling this case? Your Honor, it wouldn't be if they had brought a declaratory judgment action in the Virgin Islands. What they brought was a money claim, and at the time that they brought the money claim, the evidence suggests that they were not above the $10,000 threshold. So you're saying a declaratory judgment declaring that they're entitled to a certain amount of money as damages for their contract breach? No. That doesn't... No, they're not entitled to... The point, Your Honor, is they're not entitled to damages. Well, that's your position on the merits. But are you saying that even if you're wrong on the merits, and they are entitled to damages for breach, they still should have proceeded by way of a declaratory judgment action for breach of a contract, which would ultimately lead to the award of damages? No, Your Honor. That doesn't make sense to me. Well, right, and so I think that we have to look at it in the boxes. One is, if you interpret the contract in the manner which we believe is appropriate, that there's no monetary damages available for plaintiffs in this context, for what they're alleging here. But there would be, if they believed that in a different context, that there was a non-conformance with the conforming methodology, then they had under 10.4.2 the right to seek declaratory judgment in front of a district court, at which point in time the governor had two options. One was to change the regulation to conform with the conforming methodology, or to publish notice that it no longer intended to conform with that methodology, at which point in time there would be no monetary damages. So, continuing with the notion that the trial court erred in the first instance by finding that it had jurisdiction, the trial court presented two justifications for its holding that the monetary relief remained available to plaintiffs, despite the terms of the contract. And first, the court said there's a presumption of monetary relief in a breach of contract claim, unless the contract expressly disavows monetary damages. But that's exactly the situation here. Under Sections 3, 10.4.2, 10.4.3, and 11, the contract disavows money damages for the claims that they're bringing here. These are breach of settlement claims. Where do these claims that disavow monetary relief reach that? 10.4.2, the context here is they say that the government failed to provide notice and failed to conform with the conforming methodology. Under 10.4.3, the government is free to no longer conform if it provided notice. That's your position on the merits. Yes. So if you're wrong in your position on the merits, then it seems to me the damages provisions may well come into play. It seems to me the argument you're making is we're right in our reading of the contract, and therefore they're not entitled to damages, and therefore the Court of Federal Claims lacks jurisdiction. But the court has jurisdiction to decide whether you're right on the merits, does it not? Yes, Your Honor. Are you assuming your own conclusion and then saying, extrapolating from that to say that there's no jurisdiction because you're right on the merits? I think that's correct. Now, I think our argument has been that, and if we're wrong, we're wrong, but our argument was that under these facts and under this contract, on the face, there's not a monetary claim that can withstand this contract. I will turn next, though, to the… Do you want to talk about res judicata at all? No, Your Honor. Given the limitation of time, I'd like to move on. Okay. On the substance of the merit, then, plaintiffs… we believe the trial court correctly decided that the plaintiffs failed to state a claim. And the plaintiffs, however, argued that the express terms of the contract were breached in two ways. First, by the failure to consult with the sick and tack, and secondly, failing to provide notice. With respect to the sick and the tack, the trial court correctly held that once OPM decided to provide a notice, that it no longer intended to be bound by the conforming methodology, OPM no longer needed to consult with the sick and tack. That's footnote 10 and page 16. This holding, although appearing after the trial court's initial discussion of the sick and tack consultation issues, is dispositive of the matter, and it's entirely correct. Consulting with the sick in connection with the change of COLA rates was a requirement for adhering to the conforming methodology. But once the government decided to no longer adhere to the conforming methodology and, indeed, to terminate the COLA regime, there was no need to consult with the sick and tack. And the settlement agreement recognized this dynamic. At 10.2.1, the settlement recognized OPM's discretion to issue or amend any regulations, and even new COLA rates didn't have to adhere to the conforming methodology. 10.4.1 similarly recognizes that OPM is free to issue new regulations or COLA rates at any time. Then at 10.4.3, the settlement agreement stated that, with notice, OPM could, without facing any liability, revise its regulations or set COLA rates in a manner that is not consistent with the conforming methodology. Which paragraph are you reading from there? 10.4.3, which is the key paragraph in the settlement agreement you're on. Well, isn't there some ambiguity here? I mean, isn't there some lack of clarity that it can revise its regulations or set COLA rates, suggesting that it can deal with COLA rates but not eliminate them entirely and go to locality pay? We don't think that there's any ambiguity because it says, revise its regulations or change COLA rates. Regulations are not set up necessarily relating to COLA. And in this regard, the actions that the government took were to change its regulations because there wasn't a right in perpetuity for the plaintiffs to have a COLA regime in place. So the circumstances were actually relatively straightforward. Based on Congress' passage of NARIA, OPM decided it could no longer adhere to the conforming methodology. It provided notice to plaintiffs through publication in the Federal Register, and then it set forth regulations implementing the change from a COLA to a locality pay regime. If I understand, to go back to the question of consulting with the SIC, and I guess the TAC is optional, so it's just the SIC. Your argument is that because you went to a locality pay-based pay system as opposed to a COLA, the SIC is really only there to tell you how to calculate COLAs, and they have nothing really to add on the locality pay part of the equation, right? That's correct. And their answer is, well, at least for a period of time, the COLA would be folded in. So the SIC was still relevant, but I take it your answer to that is, well, you tell me if I'm wrong, but I take it it is that the COLA remained pertinent to the calculation of the actual dollar amounts paid each year on a sliding scale, but only the 2009 COLA, the fixed number that had already been determined. So it's not as if there was a new determination of a COLA each year as you transitioned from the old system to the new. Is that right? Is that your position? That is exactly right, Your Honor. That's at 5 U.S.C. 5941A3, where the COLA is frozen in 2009. That rate is now frozen forever. And for instance, you might have a 14% rate for a given area. Now that's frozen. Then you have a mathematical formula going forward where as the locality pay is phased in, the COLA pay is reduced by a percentage. So there's no further reason to consult with the SIC and TAC because the SIC and TAC is going to be relevant for setting new COLA rates. You know, what are the sort of locality pay issues that are relevant in terms of cost of utilities and basket of markets, things of that nature. If you had indeed breached the notice requirement, hypothetically, if you had... Yes. What would be the relief with respect to that? Your Honor, I'm not sure. I am not sure. Of course, we don't believe that there was any breach of it. But in terms of what relief is available under this contract, I'm not sure. We're given the provisions that overwhelmingly set up the situation where there is no monetary damage award available for changing COLA. But on the theoretical notion of the breach of notice, I'm not sure what the proper remedy would be, Your Honor. And going back to the SIC, the SIC requirements tie to issuing new COLA regulations. You see that in paragraph six. So, six, there is a requirement to consult with the SIC, but that's only with respect to new regulations, which are defined in paragraph four to be the new COLA regulations. Thus, paragraph six sets forth the context of revising COLA rates in a manner that is meant to be consistent with the conforming methodology. Now, there is at least a potential issue, I guess, with respect to the use of the term regulations in two different parts of the agreement. In paragraph four, for example, which you've just cited, the use of the term regulations is clearly a reference to COLA regulations, whereas you say that in 10.4.3, the use of the term regulations is not limited to COLA regulations. It could include locality pay regulations, right? Well, I think the difference is that in paragraph four, you'll see the phrase new regulations in capital. In capital, the term regulations is in capital there. Yeah, it's new regulations. And you say that when it's capitalized, that means the COLA regulations. When it's lowercase, that means any regulations whatsoever. Right, because it's defined in paragraph four. New regulations are defined in paragraph four. Right. Because it's new COLA regulations. Correct. New regulations. Correct. Now, with respect to the notice, the trial court correctly found that there was no breach because first, there was publication in the Federal Register. And secondly, plaintiff's counsel actually received the notice. And they've now argued that the Federal Register publications didn't indicate there were a change in COLA. But if you look at that, you'll see that the interim regulation, which provided the notice for the final, noted the passage of NARIA and cited to NARIA, which then sets up exactly the nine that Your Honor was referring to at 5 U.S.C. 5941, which is that mathematical phase-out of COLA. Could you comment at least briefly on the syntax case and its applicability here? Your Honor, I was in total agreement with your reasoning, Your Honor. We don't think it applies here because the contract permitted the actions that the government took. Would you see it otherwise if the contract had been completely silent on new regulations, but Congress had just decided to change the system nine years after the fact? I'm not sure of the hypothetical, Your Honor. It goes to the notion, did the contract permit what the government did here? We believe it did. Okay. Thank you. Thank you. Thank you. With respect to the question of what is meant by regulations, I think it's not only 10.4.3 that uses the word regulations. If you look at 10.2.2, what it says is, it's a waiver provision for all claims arising after the effective date of the first COLA rate and so forth. It goes on to say, so long as OPM's regulations, small r regulations, and the rate set for COLA there under each area are reasonably consistent with the conforming methodology. So that's another instance not to deal with, not within the confine of new regulations. Well, that's a little different. In 10.2.2, it leads by new regulations on the third line. That's right. It proceeds to talk about new regulations there. So it's pretty clear in the context what's going on. But later on in that paragraph, it is referring to regulations more generally with a small r. And again, to say there's any ambiguity at all in what the word regulations means in 10.4.3, this is a motion to dismiss case. And therefore, the case should be resolved after discovery of summary judgment or trial with respect to the construction of that language in 10.4.3. Just briefly on the question of notice, the interim regulations do not use the words COLA. They do not reference conforming methodology. The most that they say is that the statute that was passed authorized locality pay. But of course, a locality pay regime can exist side by side with COLA, as it has done as COLA has been phased out the past seven or eight years. So there's nothing in the interim regulations themselves that suggests or hints that the government is eliminating COLA. And for that reason, we think that that notice was insufficient to alert the class that the government was departing from the conforming methodology. I'm just about out of time. Okay. Thank you. Thank you. Thank both sides. The case is submitted.